IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:11cv116

| | | |
|---|---|---|
| **GEORGETTA LOUISE PYLES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision by the Commissioner of Social Security ("Commissioner") that Plaintiff became disabled on January 20, 2008, but not earlier as alleged in her application for disabled widow's benefits. This case came before the Court on the administrative record and the parties' Motions for Summary Judgment [# 5 & # 9]. The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 9] and **AFFIRM** the decision of the Commissioner.

I. **Procedural History**

Plaintiff filed a Title II application for disabled widow's benefits on August

-1-

30, 2005, and a Title XVI application for supplemental security income on September 14, 2005.  (Transcript of Administrative Record ("T.") 15, 33.)  Both applications alleged that Plaintiff became disabled beginning December 3, 2004. (T. 15, 41.)   The Social Security Administration denied her claims, finding that she was not disabled.  (T. 92.)  Plaintiff requested reconsideration of the decision, which was also denied.  (T. 81.)  A disability hearing was then held before an Administrative Law Judge ("ALJ").  (T. 15.)  The ALJ issued a decision finding that Plaintiff has been disabled beginning January 20, 2008.  (T. 28.)  Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ decision.  (T. 3.)  Plaintiff then timely brought this action seeking review of the Commissioner's decision.

## II.     Standard for Determining Disability

An individual is disabled for purposes of receiving disability  payments if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); see also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.

2005). Under this inquiry, the Commissioner must consider in sequence: (1) whether a claimant is gainfully employed; (2) whether a claimant has a severe impairment that significantly limits her ability to perform basic work-related functions; (3) whether the claimant's impairment meets or exceeds the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform his past relevant work; (5) whether the claimant is able to perform any other work considering his age, education, and residual functional capacity. Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 654 n.1; 20 C.F.R. § 404.1520. If at any stage of the inquiry, the Commissioner determines that claimant is or is not disabled, the inquiry is halted. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

### III. The ALJ's Decision

In her April 21, 2009, decision, the ALJ found that Plaintiff has been disabled since January 20, 2008. (T. 28.) The ALJ made the following specific findings:

(1) The claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant meets the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

(2) The prescribed period ends on June 30, 2010.

(3) The claimant has not engaged in substantial gainful activity since December 3, 2004, her alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

(4) The claimant has the following sever impairments: generalized osteoarthritis, a status post L1 compression fracture, degenerative disk disease, a right knee medical meniscal tear, shortness of breath of uncertain etiology and a major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

(5) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

(6) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would not be able to use her non-dominant left hand for repetitive gripping and grasping.

(7) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(8) The claimant was 51 years old on the alleged onset date of disability. This is defined in the regulations as an individual closely approaching advanced age. On January 20, 2008, the claimant attained 55 years of age and her age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

(9) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(10) Prior to January 20, 2008, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on January 20, 2008, the claimant has not been able to transfer any job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(11) Prior to January 20, 2008, the date the claimant's age category changed, and considering her age, education, work experience and residual functional capacity, there were a significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c),404.1566, 416.960(c), and 416.966).

(12) Beginning on January 20, 2008, the date the claimant's age category changed, considering her age, education, work experience and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform. (20 CFR 404.1560(c),404.1566, 416.960(c), and 416.966).

(13) The claimant was not disabled prior to January 20, 2008, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(T.15-28.)

### VI. Standard of Review

Section 405(g) of Title 42 provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review, however, is limited. The Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation

marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id. When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached her decision based on the correct application of the law. Id.

V. **Analysis[1]**

A. **The ALJ Properly Evaluated the Medical Opinion Evidence**

As a threshold matter, the Court notes that Plaintiff has not clearly articulated each of the alleged errors made by the ALJ in her brief. Instead, Plaintiff states in conclusory fashion that the ALJ erred by failing to properly consider the evaluations and findings of Dr. Karen Marcus, Dr. Ricardo Bierenbach, and Dr. Chona Reguyal. (Pl.'s Mot. Summ. J. at 6-8.) Plaintiff fails to cite to any legal authority in support of her contention that the ALJ erred by failing to properly consider the findings of these three doctors.[2] Despite these deficiencies, the Court

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[2] The Court notes that counsel for Plaintiff has numerous social security appeals pending before the Court. In many of these cases, counsel has filed similar briefs that lack citations to

will consider each of Plaintiff's alleged errors in turn.

> 1. The ALJ did not err in weighing the findings of Dr. Bierenbach and Dr. Reguyal

Plaintiff contends that the ALJ failed to accord "great weight" to the medical findings of Dr. Bierenbach, Plaintiff's treating psychiatrist, in assessing the severity of Plaintiff's impairments. (Id. 7-8.) The ALJ will give a treating source's opinion "controlling weight" where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. § 404.1527(d)(2); Mastro, 270 F.3d at 178. As the Fourth Circuit explained in Mastro:

> Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. See Hunter, 993 F.2d at 35.

Mastro, 270 F.3d at 178.

The ALJ declined to afford controlling weight to Dr. Bierenbach's September 2008 opinion that Plaintiff's psychological impairments were disabling and met Listings 12.04 and 12.06. (T. 24.) As an initial matter, statements by medical

---

legal authority and fail to clearly articulate the alleged errors committed by the ALJ. The Court warns counsel that going forward, the Court will consider striking any brief submitted by counsel in a social security case that does not separately set forth each alleged error and contain legal authority supporting each of the claimant's alleged errors.

sources that a patient is disabled, unable to work, or meets the listing requirements are not medical issues, but are administrative findings reserved for the Commissioner. SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996). Because they are administrative findings, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." Id.

Moreover, the ALJ properly concluded that Dr. Bierenbach's opinion as to the severity of Plaintiff's mental impairments was not supported by the clinical evidence and was inconsistent with his own treatment notes and claimant's assertions. (T. 24.) For example, Dr. Bierenbach's treatment notes indicate that Plaintiff's "mood is entirely normal with no signs of depression or mood elevation." (T. 194-200, 203-04, 206.) Plaintiff also denied experiencing any anxiety during many of her examinations. (T. 194-195, 197, 200.) Accordingly, the Court finds that the record adequately supports the ALJ's decision to reject Dr. Bierenbach's opinion that Plaintiff's mental impairments are disabling and not to give controlling weight to the opinion. See Mastro, 270 F.3d at 178.

Similarly, the ALJ did not err in according only little weight to the medical source opinion of Dr. Chona Reguyal (T. 26), who opined that Plaintiff was limited to only minimal standing and sitting during a workday.[3] (T. 191.) The ALJ

---

[3] The Court notes that Plaintiff fails to offer any legal or factual argument as to how the ALJ erred in affording the opinion of Dr. Reguyal little weight. (Pl.'s Mot. Summ. J. at 8.)

weighed Dr. Reguyal's opinion pursuant to the factors set forth in 20 C.F.R. § 404.1527(d) and found that it was entitled to only little weight. (T. 26.) The ALJ found that Dr. Reguyal's opinion was not entitled to controlling weight because the opinion was not "well-supported by medical acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in the case record." (T. 26.) The ALJ found that the opinion was inconsistent with the treatment records. (Id.) The ALJ also noted that although Dr. Reguyal opined that Plaintiff had been totally disabled since 2004, Dr. Reguyal first saw Plaintiff on May 12, 2006. (T. 26, 192, 229.) The Court finds that ALJ's decision to accord only little weight to the opinion of Dr. Reguyal is supported by the evidence in the record.

> 2. The ALJ did not err in concluding that Plaintiff's alleged posttraumatic stress disorder was not a severe impairment and any error as to her attention-deficit/hyperactivity disorder was harmless

Plaintiff also contends that the ALJ "failed to properly give consideration to the consultative physiological evaluation of Dr. Karen Marcus . . . ." (Pl.'s Mot. Summ. J. at 6.) Dr. Marcus saw Plaintiff in September 2008 and conducted a psychological evaluation. (T. 164.) Dr. Marcus diagnosed Plaintiff with bipolar

---

Plaintiff's argument as to the ALJ's treatment of this opinion spans a single sentence. (Id.) This is the type of unsupported, conclusory argument that the Court will strike in future briefs filed by Plaintiff's counsel.

disorder, attention-deficit/hyperactivity disorder, posttraumatic stress disorder, and undifferentiated somatization disorder. (T. 173.) The ALJ considered the medical opinion of Dr. Marcus in both determining that Plaintiff's attention deficit hyperactivity disorder and her post traumatic stress disorder were not severe impairments that caused significant limitations in Plaintiff's ability to perform basic work activities (T. 18-19) and in considering whether Plaintiff's mental impairments would limit her from working full time (T. 24-27). Plaintiff, however, does not articulate at which stage she contends the ALJ erred.[4] (Pl.'s Summ. J. at 6-7.)

To the extent that Plaintiff contends that the ALJ erred by concluding that Plaintiff's post traumatic stress disorder was not a severe impairment and did not limit her from working, the Court finds that the ALJ's decision was supported by substantial evidence in the record. As the ALJ explained, Mr. Marcus's diagnoses was based on Plaintiff's subjective allegations and not on objective testing. (T. 18, 173) Moreover, Dr. Bierenbach, who saw Plaintiff for approximately two years, never made a diagnosis of post traumatic stress disorder. (T. 194-208.) The two other licensed-psychologists, Jennifer Robinson and Peggy Allman, who saw Plaintiff did not diagnose Plaintiff with post traumatic stress disorder. (T. 355,

---

[4] Plaintiff's legal argument regarding the opinion of Dr. Marcus is not supported by a single citation to any legal authority.

360.) The ALJ's decision was supported by the evidence in the record.

Plaintiff, however, is correct that the ALJ erred in concluding that Plaintiff's attention deficit hyperactivity disorder was not a severe impairment. In contrast to the ALJ's statement to the contrary, and as the medical records show, Dr. Bierenbach diagnosed Plaintiff with attention deficit hyperactivity disorder. (T. 194-203.) In fact, Dr. Bierenbach placed Plaintiff on ritalin to address her poor attention in 2007. (T. 204.) At the same time, Dr. Bierenbach noted that Plaintiff was easily distracted and that given her poor attention, she may not be able to work. (Id.) Accordingly, the Court finds that the ALJ's conclusion that Plaintiff's attention deficit hyperactivity disorder is not a severe impairment is not supported by substantial evidence in the record. See Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984); Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 474 n.1 (4th Cir. 1999).

Any error by the ALJ in this case, however, was harmless because the ALJ discussed in detail Plaintiff's attention and concentration limitations at the later steps in concluding that "there has been no persuasive evidence that the claimant cannot engage in full-time competitive work because of any mental limitation." (T. 25-26); see e.g., Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003) (unpublished); Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th

Cir. 2010) (unpublished); Swanson v. Astrue, No. 2:10cv217, 2011 WL 2582617, at *8 (D. Vt. Jun. 29, 2011) (collecting cases). Moreover, there is substantial evidence in the record supporting the ALJ's determination that Plaintiff's mental limitations were not sufficiently severe to constitute a disability. Plaintiff reported good attention and/or concentration to Dr. Bierenbach after he placed her on Ritalin. (T. 194-204.) As the ALJ noted, Plaintiff was able to concentrate for a significant period of time in order to complete the MMPI. (T. 25, 164.) Accordingly, the Court finds that any error in not listing Plaintiff's attention deficit hyperactivity disorder as a severe impairment at step two was harmless because the ALJ's determination that Plaintiff's mental impairments did not render her disabled was supported by substantial evidence in the record.

### B. The ALJ's Credibility Determination is Supported by Substantial Evidence in the Record

Finally, Plaintiff contends that ALJ erred in assessing her complaints of pain. As an initial matter, the Court recognizes that it is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. Rather, the question for the Court is whether the credibility determination of the ALJ is supported by substantial evidence. Id. In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically

determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that it could reasonable be expected to produce the symptoms or pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595. In addition to the objective medical evidence, the ALJ considers: (1) the daily activities of claimant; (2) the location, duration, frequency, and intensity

of the claimant's pain and symptoms; (3) factors that predicate or aggravate the claimant's pain and symptoms; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes in order to alleviate the pain or symptoms; (5) any treatment other than medication that claimant received to alleviate the pain or symptoms; (6) any additional measure that claimant used to relieve the pain or symptoms; (7) any other factors concerning claimant's functional imitations and restrictions resulting from the pain or symptoms. 20 C.F.R. § 404.1529(c)(3); see also Aytch, 686 F. Supp. 2d at 605.

The ALJ's credibility determination must constitute more than a conclusory statement that the claimant's allegations are not credible. SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). The decision must contain specific reasons for the finding and must "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

In contrast to Plaintiff's contention to the contrary, the ALJ applied this two step process in assessing her statements of pain and other symptoms. The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms Plaintiff alleged. (T. 21.) The ALJ then found that the Plaintiff's "statements concerning the intensity, persistence and

limiting effects of these symptoms are not fully credible prior to January 20, 2008."
(Id.) The ALJ then provided detailed and specific reasons for why she found Plaintiff's testimony not fully credible. (T. 21-23.) For example the ALJ pointed to inconsistencies in Plaintiff's testimony at the hearing with the evidence in her medical records. (Id.) The Court finds that the ALJ's determination that Plaintiff's testimony was not fully credible is supported by substantial evidence in the record.

## VI. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 9], **DENY** Plaintiff's Motion for Summary Judgment [# 5] and **AFFIRM** the Commissioner's decision.

Signed: March 19, 2012

Dennis L. Howell
United States Magistrate Judge

\

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).